Good morning, Your Honors. I would like to reserve five minutes of my time for rebuttal. This appeal involves the issue of a determination of whether Michael's Floor Covering, Incorporated, is the substantial continuation of Studer's Floor Covering, Incorporated, in the context of withdrawal liability in the construction industry. It is a very fact-driven determination. And before I go into the law, I'd like to just review the facts that the pension fund put before the district court. Prior to Studer's Floor Covering closing its doors, one of its longtime salesmen, Michael Hassel, saw an opportunity for a new floor covering business. He drew up a floor plan – excuse me, a – You know, I think we know this, and this is a very interesting case with interesting legal questions, and I'm not sure it's worth your sitting up here and reciting the facts. Okay. All I wanted to emphasize was the fact that he saw the opportunity, took advantage of it based on inside information, and obtained a significant amount of business from use of that information. Well, he took over the – took over a substantial number of the accounts of the previous owner, is that right? That is our contention. And the invoices and evidence – Just go over there, store. Oh, the prior owner, he got a lease on the same premises, yes. And he got – he went out of his way to get the same phone number for which the prior owner had to give approval. He even copied the sign, right? The sign looks substantially similar, and that's in the evidence.  So why don't you get to the legal points, as Judge Berzon suggested? Thank you. In this context, the – this is the context in which the Court needs to make a determination as to what factors should be considered, the weight to be given each of those factors in deciding whether, in fact, Michaels is a substantial continuation for purposes of withdrawal liability in the construction industry. With regard to successor liability, the Supreme Court long ago noted that the legal obligations of a new employer to the employees of a former employer – and this is a case that requires analysis of the interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each case and the particular legal obligation which is at issue. And that's from Howard Johnson, 417 U.S. 249 at 262. No appellate court has yet ruled on how those interests should be balanced in the context of withdrawal liability in the construction industry. Michaels has submitted several construction industry cases that deal with – In artistic furniture or in – I forget the name of the case. It rises out of a bankruptcy situation. Yes. Tasmac, and I don't think I'm pronouncing it right. Yes. The Seventh Circuit did find that there's no reason why – MPPAA, yes, context. Correct. But that's not construction industry, and that does make a difference here due to the special construction industry rule for withdrawal liability. But they apply the basic principle you're advocating for, though, correct?  But it's kind of weird in the construction industry because it's sort of backwards. And then there doesn't seem to be much doubt – I guess there are two levels of questions here. One, at least at some point, your opponents seem to be arguing the whole concept doesn't apply to the construction industry exception. I don't know whether it's going to argue that today. But there's – as to the nonconstruction industry context, it seems quite comfortable to apply the usual standards. The problem here is that there is a statutory rule about when the absence from the market matters and when it doesn't, and the question is can you transfer that to another entity. Yes, Your Honor. It's another entity. There's no doubt this is a different entity, right? It's not an alter ego situation or anything like that. We are not arguing alter ego.  It is a different owner. And the question is, is it a substantial continuation? And calling it a different entity, I think, is a bit of a sidestep of the issue because the issue is whether, in essence, Corporation B is a substantial continuation of Corporation A for the purposes of withdrawal liability in the construction industry. And as the Supreme Court has said, we need to look at the laws underlying the statute in determining and balancing the interests of the party in the context of the legal obligation at issue. The construction industry rule is an exception to a remedial statute. ERISA and the MPP. One possibility is that Congress somehow foresaw this and said we're going to have the original entity not have to pay withdrawal liability if it comes back in. But that's the way we're dealing with it, because we understand that if that once somebody goes out of business, somebody else is going to come in business and may take over their, some of their customers and situations and so on, but it's not the, and they may be contributors and they may not be contributors. So this is how we're going to deal with the situation. We're going to say the original person either pays or doesn't pay. Is there any case law? There's case law that indicates that the purpose of the construction industry exception was based on an understanding, Congress's factual determination, that in that industry employees go frequently from different employer to different employer from job to job. It's a much more fluid workplace than other situations. And because the assumption that Congress made is that most, if not all, of those jobs would go to other union employers in the area, they said, okay, as long as you stay out of business. But if it doesn't, then there's no, it doesn't come out any differently. That is correct. I mean, for example, if there's only one union employer in a particular area and he is going to a, to everyone else, could they all be successor employers? No, I think it's, as I say, a fact-based determination. This is, we know this isn't a situation where there's only one union employer. There's deposition testimony in the record from at least one other union employer, and there's been no argument that that's the case. Again, the evaluation for successor liability is, is this company a substantial continuation? So in your hypothetical, those other companies are not a substantial continuation. And if, if we were to say that's the case. Kagan. So the fact that he, suppose we backed out, suppose he didn't have the same location and he didn't have the same phone number and he didn't have a sign that looked kind of the same, but he was a former salesman for this company and he did go around soliciting the same customers and got them? I would argue that if he got the extent of customers that Michaels got from Studer's that based on the policy considerations underlying the construction industry exception, which is based on protecting the funding base and only allowing there to be no withdrawal liability where there is not a significant erosion of the funding base, that perhaps even in that situation, successor liability should attach. Where would you draw the line? I mean, how would employers ever know? How would courts ever know? Well, he got 28 percent of the former customers. That doesn't work. He got 31. That works. I mean, it seems like a very amorphous concept you're arguing here. Well, courts deal with judgment calls all the time. In fact, dependent determinations. And I don't think this is so close a call. If you look at the invoices issued by Michaels in its first three months as a brand new business and the substantial amount of the dollar value of those invoices in a brand new business, it turns out if you look at all the invoices issued, 72 percent. It's 95 percent of 75 percent. But 72 percent were Studer's customers. So this isn't even under 50 percent if one wanted to draw a line. The substantial amount of work dollar-wise, and I have put into demonstrative exhibits. I can give you the site to them if you wish. And they are in the, excuse me, in the brief and in the declaration tied to the invoices which are actual evidence. Some of the invoices clearly, if it's an invoice to New Tradition Homes, and by the way, that was a fact under seal which opposing counsel has graciously agreed that he, since he says it in his brief, I can use the name. New Tradition Homes with multiple invoices, I think it would be highly unlikely to raise an inference that that is a one-time residential flooring business. So many of the invoices, it's quite clear from the face of the invoice whether you're looking at commercial or residential. And 95 percent of those that appear to be commercial were Studer's customers with a very high dollar figure value. Now, I'm going to ask you a question. Are you arguing, are you arguing that the district court made an error of law in some way, shape or form? Yes. Because you said it's very fact-intensive. It's fact-intensive. It was tried to the court without a jury. Facts as found by the judge are entitled to great justice. So where are the errors of law? She applied the wrong standard. She put too much emphasis on some factors such as continuity of the workforce, although we think that it is there. Nonetheless, we argue that for this legal obligation, the significant factor should be the amount of repeat business, the amount of the pension fund's funding base that was essentially taken by the new employer based on inside information, based on knowing ahead of time the former employer is going to go out of business, based on relationships he created as a Studer's representative. If Studer's were still in business, this would have been grounds for a potential case for misappropriation of trade secrets or unfair competition. Studer's didn't care because it was going out of business. I'm down to 3 minutes and 45 seconds, and I would like to reserve that. Thank you. Mr. Miller. May it please the Court. I'm Bob Miller. I represent the Defendant Michael's floor covering. The question before the Court is whether you can make the plaintiff's case based on the facts as found by the trial court, and you can't. Unlike — this isn't really a black hole in terms of the legal issue. Unlike Farrell's, unlike Hawaiian Carpenter's, unlike the Rolfson case, there is no continuity in the business. In those cases, there was, for example, a purchase and sale agreement, or there was an employer who held himself— We know from the NLRA cases and the Title VII cases and so on two things. One of them is that the factors that matter are context-specific as to the particular statute. And secondly, that that kind of transfer is not a sine qua non, right? I mean, starting with that — having that kind of transfer is not necessary. I mean, starting with Burns, for example, or— That's correct. —to a — to a successor employer conclusion. That's correct. All right. So how is that helpful to you? And so you do go back to the facts as found by the court and determine whether the facts — whether those facts in any way would support a successor liability under Ninth Circuit law or under the— That is one of the factors, though. But, no, that's not a — that is not the preclusive factor or the sole factor. There are several. For example, in the Ninth Circuit, in successor liability cases— But it would be helpful to me if you deal with the argument that's being made, which is that we don't just transfer these — the significance of the factors from one statute in context to another. And we have to start by looking at the particular statute and determine. So, I mean, I think it's a creative and interesting argument, and it's not helped by saying, well, this isn't like that case or it isn't like that case, because none of those cases are like this case. Right. In the factors for successor liability under this statute in the Ninth Circuit, the single most important factor, a major consideration in these cases, is the continuity of the workforce, for example. That would come from the Farrell case, the Rolfson case. But those are not cases about the construction industry exception to withdrawal liability. The Farrell case is the Rolfson case, I believe, also. I thought those were about contribution — about whether they are liable for contributions. Right. Not for withdrawal liability. You're correct, Your Honor. All right. So they're not about this. So it's not helpful to tell me they are, because they're not. No, they do come under the NPAA, is what I was — what I was offering to the Court. And they're not really about the NPAA. They're about the obligation to make contributions. Your Honor, yes, Your Honor. They do mention the NPAA. They were decided under the NPAA, as was the Hawaii Carpenters case. And there — the Court makes a good point. There isn't a case that is on point here that — because there is no finding of ever holding anybody in this circumstance. But you argue in the district court that the whole concept just doesn't apply to this context. Do you still argue in that? Excuse me? You argue in the district court that this whole concept of successor liability just doesn't apply to construction industry withdrawal liability. I gather you're not arguing that anymore. Well, there's not been a case that has found the imposition of withdrawal liability under these type circumstances. No, there's not. No, but what's your argument? I mean, are you still making the same argument as you did in the district court? Yes, Your Honor. That it shouldn't apply, the doctor shouldn't apply here in this particular context. Yes, Your Honor. Why? Because the statute is found by the court under the — But that's a different point. My understanding of what you argued in the district court was essentially that because the statute provides for an employer to be — not to have to pay withdrawal liability if they don't continue in business, and because Studer's doesn't — didn't continue in business, that's just the end of it. And you don't look for successor liability. Am I wrong about what you argued? That is what I argued. Are you still arguing it? Your Honor, I'm addressing the order issued by the court. The order issued by the court — All right. So you're not. The answer is no. That's not your legal argument anymore. No. I'm addressing the order issued by the court. The order issued by the court was that there was no successorship finding. Okay. So you're essentially conceding that on some set of facts there could be a successorship finding. No, Your Honor. No? No, Your Honor. Well, why don't you go back to square one? Sure. What I'm defending is the finding of the court that there is no successorship liability. The argument that I made with respect to withdrawal liability under the construction exception wasn't a determinative argument by the district court. So what I'm addressing is the argument by the district court and on the appeal, and that is whether there's not — whether or not there is a continuity, a substantial continuity that would support successorship. And — But you're asking us to assume, you're assuming and we should assume, that on some set of facts there would be a successorship liability. Well, I understand that that's the court's position, and that decision hasn't — That's not our position. We haven't taken a position. But that decision hasn't been made, Your Honor. That decision isn't before the court on this, and it hasn't been made in other cases in the Ninth Circuit. Which case? It has not. My understanding is — maybe I — let me see if I can get some clarity in my own mind. You argued there could not be successorship liability. I did, Your Honor. In the district court. I did. And you basically lost on that point in the district court. The district court then found on the facts there were no successorship liability. Yes, Your Honor. And what you're telling us is you're basically still holding to the point that you originally argued in the district court, having lost there, you are now defending the district court's decision here as it stands. Yes, Your Honor. Am I right? I am defending the district court's finding that there was no successor liability. On the facts. Yes, Your Honor. Okay. So what about the conceptual point? Now, as I understand, the basic conceptual dispute with the district court's is that she went through the set of factors in Ferris as if they were entirely transferable, including the weight to be accorded to them. Yes, Your Honor. And that she shouldn't have done that, that this is a different — that a different circumstance and that the — that not the only factor, because I — I mean, the fund may have the position that it wouldn't matter whether or not there was essentially an exploitation of Goodwill, even though it wasn't sold. But that does seem important. But still, that the customer base is much more important than she said. Yes, Your Honor. Now, what about that? Your Honor, there's no evidence as to what happened with the customer base beyond the invoices that were put into evidence. Now, those invoices were — Well, that seems like pretty good evidence. Those invoices were business records that are admissible, but there is no evidence to support the characterizations of who was a business. Well, suppose we disagreed with that. Excuse me? Suppose we disagreed with that. If you disagree with that, then you would be looking at invoices only, not revenues. There is no evidence of what revenues were. Well, suppose we disagreed with that. I mean, it does appear that, at least as to the billings, a huge percentage were to former customers of Studer's. All right? Let's assume that for now. Then what? The district court found that neither party submitted evidence as to what percentage of Studer's clients with ongoing flooring needs used Michaels, and that's an uncontroverted finding. What we don't know is how much of Studer's clients used floor covering services. But I'm trying to get at something conceptual. Okay. Forget the facts of this case. Suppose it were proven properly in your view that 80 percent of the revenue was from customers of Studer's. Let's just assume that fact. Then what? That wouldn't be dispositive because we wouldn't know how much revenue was generated from Studer's former customers overall to know if it was a substantial amount. Whatever set of facts you want to stipulate that would demonstrate that, in fact, he took over a very large percentage of the Studer client base, however you want to find that. Right. What's the relevance of it? There is the relevance of how much of Michaels' business constituted former Studer's customers. Right. Very little relevance because we don't know overall how much of Studer's clients went to the six other union competitors in the area. So we don't know how much of Studer's work that, if Studer's was still in business, they would have done would have gone to the union installers. Okay. But that's still a factual claim. Suppose we knew that, too. I'm just trying to get at the conceptual issue. Right. All right. Suppose we knew that he had not only to do with 80 percent of Studer's customers, but nobody else did. I'm just trying to get at the conceptual question of, and you're fighting it, of whether their basic thesis, that in this particular context, the transfer of the customer base is the most essential point, is right or wrong. It's not a transfer of the customer base, though, because they didn't assume any work in progress, they didn't buy any contracts. What they did was they went out on one job at a time. And they issued one invoice at a time. And they did one piece of work at a time. The dispositive fact on that, Your Honor, is the Michael Matson testimony with regard to the master employment contract that Michaels entered into with New Tradition Homes. That master employment agreement, Michael Matson testified, was simply made them eligible to do work. But what happened from that point on is Studer's had to get one piece of work at a time, one invoice at a time, and then send an invoice out and turn it into revenues. So there wasn't an assumption of the work. If Studer's was doing — if Michaels was doing 80 percent of Studer's work, that still would not — is that the question? All right. So I'm taking your answers to be that, yes, they're conceptually right, but factually wrong. Is that what you're saying? Conceptually — Right, but factually wrong. I.e., there is a set of circumstances in which a takeover of the customer base would translate into a successorship finding for those purposes, but this just isn't it. No, Your Honor. I think that if all of the other factors lined up to where there was successorship liability, where the overwhelming factors did line up and that factors — But where are they getting these factors from? The factors — Where are you getting the factors from? From the Hawaii Carpenter's case, from the Rawlston case, from the Sullivan case, from the Farrell case, the cases that were decided by the United States. And you're just assuming that these factors just transfer from one context to another? They have — those seven factors, the factors that have been employed, have transferred from one context to another, but they are fact-specific inquiries. Those seven factors were developed in Fall River Dying and have been — But what I can see, in the NLRA context, the focus is on the employees' situation in the workforce, because what you're trying to figure out is whether they would react the same way or differently to whether or not they want to be represented by a union. So if the work situation is similar and the employees are similar, there's an assumption made that they would have the same view of union representation. That's one category. Yes, Your Honor. And then there's a set of — a situation in which you're trying to find liability in a success for unfair labor practices or for Title VII violations or for FLSA violations. And in that context, the focus is more economic. That is, it's whether the — and some asset sales or economic interaction seems to be important, because — but the employee continuity is less important, because the theory is if they bought — if they had an economic transaction with the former company, this liability should have been in it. So that's a different context, right? The argument they're making is now we have a third context in which the — we focus differently for the — and we focus on the customer transfer with some other factors as well, but in which the employee perception is less important. Why is that wrong? Your Honor, there is no case that has taken that point. Fine. That's what we're here for. Yes. It's to make legal decisions in novel situations. Okay. In this case, there is no evidence to support the factor that they're offering, Your Honor. That's the fundamental problem with this case. So the two reasons it's wrong is there is no case and the facts are not — don't support it. But not because it's wrong. Well, I think I would say — I think I would say it could be — it could be a factor if there were some evidence to support it, but here is the problem with the argument as presented. The plaintiffs had access and deposed both presidents of both companies. They had access to all of the client information and chose not to depose the clients. They didn't put any evidence in front of the Court as to how much of Studer's — if Studer's was still in business, how much of their work was done by Michaels. Can I ask one other question to change focus for a moment? As to the employee complement transfer, is it correct that the district court — I understand you have a different view of the facts, but as to what the standard is, the standard — did the district court apply the right standard with regard to whether it's a majority of the Studer's workforce that came to Michaels or whether it's the majority of the Michaels workforce that came from Studer's? The district court applied the correct standard. Which is? The district court found that there was no continuity in the workforce from Studer's to Michaels. Because? Because there were no direct hires in the installers. The installers that were hired all had anywhere from 6 months to 12 years' breaks in employment. They were unemployed or had worked for competitors in between the employment with Studer's and Michaels. Okay. Your time is up. Thank you, Your Honor. I'd like to make one quick response to the last point, and then there's four points I'd like to make. With regard to how the percentage of employees is calculated, I believe it's the Falls River case that talks about the percentage of the new company's employees, because it is the presumption of whether the union would have continuing majority support. But did the district court do it wrong? I believe so. The district court said how many of Studer's employees went to work for Michaels rather than how many of Michaels' employees had been at Studer's. The four points I'd like to make real quick. Independence argument leads to the conclusion that there could never be successor liability for withdrawal liability in the construction industry. And I don't think that's supported by the statute. I don't think he quite said that. I think he's backed off that argument. I believe you're right, and I hadn't made this note. With regard, he also noted that facts found by the district court. But one of our issues on appeal is that the district court did not make a specific finding as to the extent to which Michaels obtained the customer base from Studer's. Let me ask you this. What are you asking us to do? What is the relief you want from us? Ideally, we would like you to reverse and find that as a matter of law, Michaels is a substantial continuation of Studer's. What if they apply? What if the district court applied the wrong test? What do we do? The alternative would be to remand and reverse for findings consistent with your opinion. And in that regard, findings would need to include the extent to which Michaels took over the customer base of Studer's, which, if you read the Court's opinion, the Court did not make a finding. It said even if. And there's no mention in there of how much. With regard to there not being evidence, the invoices are evidence with inferences that come from that. Michaels has information about how much revenue he got. There was no contrary evidence put in. The standard is preponderance of the evidence. There is no evidence that those invoices were not paid. There is an as to the amount of business Studer's had previously. Another issue on appeal is that the district court denied our motion to supplement the record when it became apparent it was going to be a bench trial on these issues rather than summary judgment. We have several years of Studer's invoices we wished to put in. Michaels was free to put in information, either his own from what his revenues were, information from Studer's who, either through deposition or, quite frankly, they are not antagonistic to each other. No evidence was put in that the amount of business was not a significant amount. If it had been on rebuttal, we would have put in evidence we had obtained from Mr. Studer in deposition that his business had dwindled in the last year. So if you're looking at the transition period, the business was not that different. Twenty years previously, he was going great guns, but it had dwindled. It was 2009, the year after the economic collapse. And so I believe we would have been entitled to put in information and rebuttal to any information from them that there was not a substantial amount of Studer's business going to Michaels. And then you know, you agreed with the district court's innovative procedure there. We did agree because you could have just said just deny it, just decide the summary judgment. And then we would have been back on the same papers before the same judge for a bench trial. For a bench trial, but there's a difference. Perhaps we should have, Your Honor. The other thing that Michaels could have done is argue for this being a partial withdrawal if, in fact, the amount of business was significantly less than Studer's had the year or two previously. And that could be done in the context of an arbitration. In sum, the district court applied the wrong standard, didn't make sufficient specific factual findings, and improperly denied our motion to supplement. Thank you, Your Honors. Thank you. Thank you, counsel, for your arguments. The matter is submitted.
judges: Paez, Berzon, Ezra